UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEDRO FRANCISCO PEREZ,

Plaintiff,

v.

GENERAL MOTORS LLC,

Defendant.

Case No. 25-cv-08210-JST

**ORDER DENYING MOTION TO REMAND**

Re: ECF No. 14

Before the Court is Plaintiff's motion to remand the action to state court. ECF No. 14. The Court will deny the motion.

## I.      BACKGROUND

On August 22, 2025, Plaintiff Pedro Francisco Perez filed this action in Sonoma County Superior Court, alleging that GM failed to fulfill its obligation to conform a 2020 Chevrolet Traverse vehicle purchased by Perez in 2019 to applicable express and implied warranties. ECF No. 14 at 7–8. The complaint asserts claims arising under California's Song-Beverly Consumer Warranty Act, Magnuson-Moss Warranty Act, and Uniform Commercial Code. ECF No. 1-1 ¶¶ 8–61. For his Song-Beverly claims, Perez seeks "actual damages, a civil penalty of up to two times actual damages, and attorney's fees." *Id*. ¶¶ 17, 24, 28, & Prayer for Relief (c). He alleges entitlement to double civil penalties because Defendant's conduct was "willful, in that Defendant and its representatives knew of their legal obligations and intentionally declined to follow them." *Id*.

On September 26, 2025, Defendant General Motors, LLC ("GM") filed a notice of removal in this district, relying on 28 U.S.C. §§ 1332 and 1446. ECF No. 1. On October 17, 2025, Perez filed the instant motion to remand, arguing that GM had not satisfied its burden to show that the

amount in controversy satisfies the threshold to confer diversity jurisdiction under Section 1332. ECF No. 14 at 7.  On October 31, 2025, GM opposed, ECF No. 22, and on November 7, 2025, Perez replied, ECF No. 23.

**II.    JURISDICTION**

This Court has jurisdiction under 28 U.S.C. § 1332.

**III.    LEGAL STANDARD**

Under 28 U.S.C. § 1446, a defendant may remove a civil action from state to federal court if the federal court has subject matter jurisdiction over the case.  The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction,"[1] and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008); *see* 28 U.S.C. § 1441.  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Gaus*, 980 F.2d at 566 (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).  It is a "longstanding, near-canonical rule that the burden on removal rests with the removing defendant."  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

Federal courts have diversity jurisdiction over civil actions where each plaintiff is a citizen of a different state than each defendant and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Where the defendant seeks removal of an action based on diversity jurisdiction under Section 1332, the operative amount in controversy is that "demanded in good faith in the initial pleading," unless the complaint does not request a specific amount or the state at issue permits recovery of damages in excess of the amount demanded and "the district courts finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in

---

[1] GM argues that strict construction of the removal statute in favor of remand is no longer the rule because, since 1948, exceptions to removability must be expressly provided by Congress.  ECF No. 22 at 8 n.1 (quoting *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697–698 (2003)).  However, no exceptions to removability are at issue here and in all other respects, strict construction of the removal statute against removal jurisdiction appears to remain the rule.  *See Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018).

United States District Court
Northern District of California

[S]ection 1332(a)." 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. Under this standard, the defendant bears the burden of providing evidence establishing that it is more likely than not that the amount in controversy exceeds the threshold amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (2007).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)); *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (defining the amount in controversy "as simply 'the amount at stake in the underlying litigation'" (quoting *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005))); *Jauregui*, 28 F.4th at 994 ("Importantly, that '"[a]mount at stake" does not mean likely or probable liability; rather, it refers to *possible* liability.'" (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (emphasis original))). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (holding that the that the amount in controversy includes all amounts "'at stake' in the litigation, whatever the likelihood that [the plaintiff] will actually recover them").

## IV.    DISCUSSION

### A.    Actual Damages

GM has established by a preponderance of the evidence that the actual damages at issue in this case are $49,186.48.

Under the Song-Beverly Act, a plaintiff may recover "an amount equal to the actual price paid or payable by the buyer," reduced by "that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer . . . for correction of the problem that gave rise to the noncomformity." Cal. Civ. Code § 1793.2(d)(2)(B)–(C). The

3

mileage offset—the deduction in value attributable to use by the buyer—is derived by identifying the first repair relevant to the defect that gave rise to the noncomformity, then taking the number of miles driven before that, dividing by 120,000 and multiplying by the vehicle's cash price. *Id.* § 1793.2(d)(2)(C); *see Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706, at *2 (C.D. Cal. Feb. 27, 2024).

To assess the accuracy of an estimate of the actual damages in controversy, therefore, courts require Song-Beverly defendants to identify and account for: the agreed-upon sale amount, the details of any financing plan and the number of payments made pursuant to that plan, the miles driven by the Plaintiff, and the timing of the first relevant repair. *Chajon v. Ford Motor Co.*, No. 218CV10533RGKRAOX, 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019); *Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *2 (S.D. Cal. Apr. 28, 2021).

"In addition, amendments to the [Song-Beverly Act] that took effect January 1, 2025, provide for other statutory offsets based on negative equity, manufacturer's rebate, any optional equipment or services supplied by third parties, and unpaid interest or financing costs." *Keyes v. General Motors, LLC*, No. 25-CV-2556-RSH-VET, 2026 WL 177944, at *5 (S.D. Cal. Jan. 21, 2026) (quoting *Clay v. Gen. Motors, LLC*, No. 2:25-CV-07962-AH-(MARX), 2025 WL 3632732, at *2 (C.D. Cal. Dec. 15, 2025)); *see* Cal. Code Civ. Proc. §§ 871.27(b)–(d), 871.26(f).

Here, Plaintiff purchased a 2020 Chevrolet Traverse with 30 miles on the odometer for $57,784.44, including finance charges and a cash price of $34,624.35. ECF No. 22-2 at 2. On April 16, 2021, with 13,800 miles on the odometer, Perez presented the vehicle for repair for brake squealing, which GM avers was the first relevant repair presentation. ECF No. 22-1 ¶ 3; ECF No. 22-3 at 2.[2] Subtracting the initial 30 miles from 13,800, dividing by 120,000, and multiplying by the cash price of the vehicle yields an estimated mileage offset of $3,973.14. ECF No. 22 at 11.[3]

---

[2] In its opposition to the motion to remand, GM instead identifies a June 17, 2021 repair date, at which point the vehicle had 15,120 miles on the odometer. ECF No. 22 at 11. There is no evidence of this repair in the record.

[3] GM estimates a mileage offset of $4,354.01, which is based on the first repair date of June 17, 2021. ECF No. 22 at 11. Because GM provided no evidence of that repair, the Court bases its calculation on the repair presentation for which GM did submit evidence. ECF No. 22-3 at 2. The Court also notes, however, that the mileage difference between the two dates would not tip the amount in controversy across the jurisdictional threshold.

Additionally, GM identified other offsets for optional third-party contracts totaling $3,374.00. ECF No. 22 at 11; ECF No. 22-2 at 3 ($197 paid to Caltex, Inc. for a theft deterrent device, and $2980 paid to App Major Guard and $197 to Nobilis for optional service contracts).

Given that Perez has not produced his loan payment history, GM may make the reasonable assumption that Perez has made the required monthly payments. *Arias*, 936 F.3d at 922 (holding that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions."); *Paez v. Ford Motor Co.*, No. 2:24-CV-03099-MCS-AGR, 2024 WL 5311211, at *2 (C.D. Cal. July 9, 2024) ("Although Defendant has failed to provide the Court with affirmative evidence of Plaintiff's payments on the Vehicle, the Court assumes Plaintiff has made payments consistent with the payment plan set forth in the Retail Installment Sale Contract."). This is especially so because Perez knows his own payment history and does not argue that he missed any. ECF No. 14 at 14.

Assuming that Perez has made and will make the required loan payments, then, GM estimates that he had 14 monthly payments of $625.41 remaining at the time of removal. ECF No. 22 at 12; ECF No. 22-2 at 2. Based on conversations with Perez's counsel, GM further surmises that the case is unlikely to resolve early, and therefore accounts for an additional 12 monthly financing payments after removal before the matter resolves. *Id*. That leaves estimated deductible unpaid financing of 2 x $625.41, or $1,250.82. Thus, by a preponderance of the evidence, the "actual" damages at issue are $57,784.44 – ($3,973.14 + $3,374.00 + $1,250.82), or $49,186.48.

At this point, it is necessary to describe a recurring pattern in Perez's approach to arguing for remand. He repeatedly faults GM for failing to identify a particular fact with certainty or support its allegation about that fact with evidence, even though (1) GM has identified that fact, (2) Perez has declined to identify that fact in the complaint or in the moving papers, even though the fact may be uniquely within Perez's knowledge, (3) GM has put forward some evidence of the fact and (4) Perez has not put forth contrary evidence. For instance, GM avers that the defect giving rise to the claims is likely the brake squealing, based on a repair order to address brake squealing; Perez nonetheless argues that GM has failed to identify the defect and simultaneously declines to say what the defect is. ECF No. 14 at 14. Similarly, Perez repeatedly argues that GM

United States District Court
Northern District of California

"must provide specific facts regarding the Subject Vehicle's sales agreement and actual use" and that GM fails to account for such matters as "finance charges, evidence concerning when repairs were made" and "sales price, financing, payments made, miles driven," when in fact (2) GM has done so and (2) Perez has failed to make any contrary argument or evidentiary showing. ECF No. 14 at 12–13; ECF No. 23 at 6–7. Likewise, in his reply, Perez argues that "it [i]s unclear whether" the repair order submitted as evidence by GM "was, indeed, the first repair visit for this alleged defect." ECF No. 23 at 8. However, Perez declines to state which defect underlies his claims or which visit was first, and he does not submit any evidence of a different first visit. *Id*.

Although the burden is on GM to establish removability, both sides are expected to submit proof of the amount in controversy, and Perez's refusal to do so leaves GM's evidence uncontested. *See Dart Cherokee*, 574 U.S. at 88. The Court therefore has no trouble concluding that GM's clear showing of the actual damages in controversy, based on the sales agreement, a repair order, and the assumption that Perez has made all required financing payments, satisfies its burden.

### B.    Civil Penalties

The Song-Beverly Act permits a plaintiff to obtain a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794.9(c). Perez argues that GM "has proffered no evidence whatsoever that [Perez] will receive the maximum amount of civil penalties—or, indeed, any penalties at all." ECF No. 14 at 15. But it is not GM's burden to establish its own *liability* for the amount that Perez has placed in controversy. *Arias*, 936 F.3d at 927 (9th Cir. 2019) (holding that it is improper for courts to consider the likelihood of recovery in evaluating the amount in controversy). Rather, it is GM's burden to show, by a preponderance of the evidence, that civil penalties *have been placed* in controversy.

Many district courts in this circuit have required a defendant seeking to justify removal to show that a civil penalty is "more likely than not to be awarded." *See Khachatryan v. BMW of N. Am., LLC*, No. CV 21-1290 PA (PDX), 2021 WL 927266, at *2 (C.D. Cal. Mar. 10, 2021) (requiring the defendant to show "that such a civil penalty is more likely than not to be awarded"); *Castillo v. FCA USA, LLC*, No. 19-CV-151-CAB-MDD, 2019 WL 6607006, at *2 (S.D. Cal. Dec.

5, 2019) (same); *Makol v. Jaguar Land Rover N. Am., LLC*, No. 18-CV-03414-NC, 2018 WL 3194424, at *2 (N.D. Cal. June 28, 2018) (same); *Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (finding that the defendant has not met its burden to show that civil penalties are in controversy because it "provide[d] no support for the likelihood that a civil penalty based on its willfulness would actually be awarded in this case, or that the full civil penalty would be awarded"); *Quinones v. FCA US LLC*, No. 2:20-CV-06144-RGK(JPR), 2020 WL 4437482, at *2 (C.D. Cal. July 31, 2020) ("Moreover, while civil penalties are available for willful failure to comply with the Song-Beverly Act, Defendant has not offered any evidence of willfulness which might support such an award.").

These cases misinterpret 28 U.S.C. § 1446, which clearly states that the defendant must show by a "preponderance of the evidence, that the *amount in controversy* exceeds the amount specified" (emphasis added). As the Court outlined above, the amount in controversy is "not a prospective assessment of defendant's liability," *Arias*, 936 F.3d at 927, and requires only that liability be "possible" rather than "probable" or "likely," *Jauregui*, 28 F.4th at 994. Moreover, requiring a defendant to show that a civil penalty is "more likely than not to be awarded" would impose a burden, only on those defendants seeking removal, to establish their own liability by a preponderance of the evidence—the same standard that would apply at trial. It seems unlikely that Congress, in requiring defendants to establish the amount in controversy by a preponderance of the evidence, intended this incongruous result.

In fact, the requirement that the defendant establish its own liability for civil penalties appears to have been erroneously introduced into the case law of district courts within this circuit. *Khachatryan*, *Castillo*, *Makol*, and many other Song-Beverly remand orders cite a 2018 case from the Southern District of California called *Zawaideh v. BMW of North America, LLC*, No. 17-CV-2151 W (KSC), 2018 WL 1805103, at *1 (S.D. Cal. Apr. 17, 2018). *Zawaideh*, in turn, cites a 1998 Northern District of California case called *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998), which considered whether to include punitive damages in the amount in controversy. *Zawaideh*, 2018 WL 1805103 at *2. But *Conrad* did not require a defendant seeking removal to establish his own liability. Rather, to establish by a preponderance

of the evidence that punitive damages were in controversy, *Conrad* required the defendant to identify some facts "that would support an award of punitive damages," in light of the "high burden that must be met in order or a plaintiff even to be eligible for receipt of discretionary punitive damages." *Id*. at 1201. The defendant needed to provide a "reliable basis for the court to determine that it is more likely than not that a potential punitive damage award could sufficiently increase the amount in controversy to meet the jurisdictional requirement." *Id*. This language is consistent with the requirement that the defendant prove the amount in controversy by a preponderance of the evidence, but it does not establish a requirement that a defendant prove that a civil penalty is "more likely than not to be awarded."

It should be clear from the above discussion, the text of Section 1446, and the Ninth Circuit's recent case law that although the defendant need not establish liability, some evidence of the amount in controversy is required. *See, e.g.*, *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (requiring "summary-judgment-type evidence relevant to the amount in controversy at the time of removal" (quoting *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)); *Arias*, 936 F.3d at 925 ("[W]hen a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." (quoting *Dart Cherokee*, 574 U.S. at 82)).

GM identifies two types of evidence that civil penalties are in controversy: first, that Perez specifically and repeatedly alleges that the violations of Song-Beverly were willful, and second, that Perez presented the vehicle for repair three times. Given the lack of contrary evidence from Perez, these facts are sufficient to establish by a preponderance of evidence that civil penalties are actually in controversy. First, the specificity of the willfulness allegations mirrors that which other courts have found sufficient to put civil penalties in controversy. For instance, in *Park v. Jaguar Land Rover North America, LLC*, the court found that civil penalties were in controversy because the complaint alleged that the plaintiff notified the defendant of the vehicle's defects and the defendant was aware of its obligation to repair the vehicle under the express warranty, but intentionally declined to fulfill that obligation. No. 20-CV-00242-BAS-MSB, 2020 WL 3567275,

United States District Court
Northern District of California

8

at *6 (S.D. Cal. July 1, 2020). This is exactly what Perez's complaint says: "Defendant's failure to comply with its obligations under Civil Code [S]ection 1793.2(d) was willful, in that Defendant and its representatives knew of their legal obligations and intentionally declined to follow them." ECF No. 1-1 ¶¶ 17, 24.

Second, GM puts forward evidence that there were three repair attempts, and based on GM's counsel's experience, Song-Beverly plaintiffs under such circumstances are likely to seek civil penalties. ECF No. 22-1 ¶¶ 3, 5. While this evidence is thin, consisting only of a declaration by GM's own counsel, it is entirely unrebutted by Perez, who has submitted no proof of the amount in controversy and has repeatedly declined to commit to any specific factual allegations. The allegations of willfulness, combined with the three repair attempts and GM's counsel's declaration that plaintiffs pursue civil penalties under such circumstances, suffice to satisfy GM's burden to show by a preponderance of the evidence that civil penalties are actually in controversy.

The maximum civil penalty available must be considered the amount in controversy. *Arias*, 936 F.3d at 927 ("[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover."). The Court therefore adds the full available civil penalty—twice the restitutionary amount, or $98,372.96—to the amount in controversy.[4] *See Sandoval v. Gen. Motors LLC*, No. CV 25-7218 PVC, 2026 WL 42587, at *4 (C.D. Cal. Jan. 6, 2026) ("includ[ing] the maximum amount of civil penalties in the calculation of the amount in controversy" because "Plaintiff does not address his own allegations regarding willful conduct or Defendant's evidence regarding the number of times the vehicle was presented for repair").

### C.    Attorney's Fees

The Song-Beverly Act allows for the recovery of attorney's fees. Cal. Civ. Code § 1794(d). Moreover, attorney's fees incurred both before and after removal are included in the amount in controversy calculation. *See Fritsch*, 899 F.3d at 794 ("Because the law entitles [the

---

[4] Other courts have required evidence of the *amount* of a civil penalty that is likely to be awarded, *see, e.g.*, *Echemendia v. Subaru of Am., Inc.*, No. 2:20-CV-09243-MCS-JEM, 2020 WL 7311348, at *2 (C.D. Cal. Dec. 11, 2020), but the Court is hard pressed to imagine how a defendant might do so without stating facts establishing the severity and extent of its own willfulness—in effect establishing its liability, which is not what the statute requires.

United States District Court
Northern District of California

plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").[5]

GM's counsel's declaration states that, based on past experience with fees sought by Plaintiff's counsel and based on Plaintiff's recent demands, the case is unlikely to settle and a reasonable estimate of past and future attorney's fees is $15,000.  ECF No. 22 at 16 (citing ECF No. 22-1 ¶ 5).  GM also analogizes to *Sandoval v. General Motors*, which held that attorney's fees in a similar case would "easily" exceed $12,500.  No. 2:25-cv-06551-DSF-SSCx, 2025 LX 410090, at *5 (C.D. Cal. Sep. 15, 2025).  Perez does not challenge GM's estimate.

Courts in this circuit require Song-Beverly defendants seeking to establish the amount of attorney's fees to explain the basis for the calculation (including stating a reasonable billing rate and projected hours) or to compare the "allegations and circumstances" or "litigation strategies or [] litigation timelines" to cases involving comparable attorney's fees awards.  *Mahlmeister v. FCA US LLC*, No. CV2100564ABAFMX, 2021 WL 1662578, at *3 (C.D. Cal. Apr. 28, 2021); *Serran v. Pac. Coast Feather Cushion Co.*, 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017); *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020).

Beyond the conclusory assertion that $15,000 is a reasonable estimate, GM makes no effort to explain how it reached that estimate and provides no evidence that the estimate is accurate.  GM has not explained the rate and hours that went into its calculation, nor has it meaningfully compared the facts of this case to cases involving fee awards of a comparable size. And unlike other aspects of the amount in controversy, GM's ability to provide a detailed and accurate account of its fee estimate was not impeded by Perez's vagueness and refusal to produce evidence.  For that reason, the Court finds that GM's conclusory assertion that it expects fees of $15,000, accompanied by no attempt to justify or explain that estimate, does not satisfy its burden of establishing the amount in controversy by a preponderance of the evidence.

---

[5] Perez cites a number of cases discussing a purported split between Ninth Circuit courts on whether to include prospective attorney's fees in the amount in controversy calculation, but that split was decisively laid to rest by *Fritsch*. *Cox v. Kia Motors Am., Inc.*, No. 20-CV-02380-BLF, 2020 WL 5814518, at *4 (N.D. Cal. Sept. 30, 2020) (characterizing *Fritsch* as rejecting the argument "that future attorneys' fees should not be included . . . because they are inherently speculative and can be avoided" by a quick settlement).

United States District Court
Northern District of California

**CONCLUSION**

Notwithstanding the plaintiff's efforts to cloud the inquiry by providing as little information as possible about his claims while refusing to commit to an amount in controversy below the jurisdictional threshold, GM has met its burden to establish that the amount in controversy more likely than not exceeds the jurisdictional threshold. Although the Court does not consider attorney's fees in the amount in controversy calculation, the actual damages and potential civil penalty award together far exceed $75,000. The motion to remand is denied.

**IT IS SO ORDERED.**

Dated: May 26, 2026



_____
JON S. TIGAR
United States District Judge